(No. 3450— )

MELVIN COOK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 13, 1941.*

GRAHAM & GRAHAM, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

Prior to and on the 1st day of July, A. D. 1939, the claimant was in the employ of respondent as a bridge painter in the Division of Highways. On the last mentioned date, while in the course of his employment, and while pulling up a staging on a bridge on S. B. I. Route No. 24, about two miles north of Green Valley, he twisted his knee and thereby injured his right knee joint. He immediately reported the accident to his superior, consulted a local doctor the same day, and was advised by such doctor to consult a bone specialist. He reported for work on July 8th, but was unable to work, and was taken to another doctor that day. On July 10th he was sent to Chicago by the respondent and placed under the care of Dr. H. B. Thomas, professor of orthopedics, University of Illinois Medical College. Dr. Thomas found a fracture of the right patella and internal derangement of the knee joint. On July 23d claimant entered St. Luke's Hospital, where Dr. Thomas operated on his knee. He remained under the care of Dr. Thomas until August 16, 1939, when he returned to his home in Pittsfield. Several abscesses developed shortly thereafter, and he was returned to Chicago by the respondent and treated by Dr. Thomas until September 2d, when he again returned to his home. On October 2d and 3d he returned to his work as a painter, but was unable to continue with the work on account of the pain in his knee. On October 31st he was again returned to Chicago by the respondent, was examined by Dr. Thomas, and returned to his home on November 2d.

Dr. Thomas, in his final report of November 1, 1939, stated that everything about the knee was satisfactory; that claimant had complete extension and flexion to 95 degrees. He further stated that in his opinion this motion could be increased with more physiotherapy, and advised that claimant

be given lighter work until the tissues could adjust themselves and give more stability to the knee.

Dr. Martin A. Reichman, who was called as a witness on behalf of the claimant, stated that the normal range of flexion of claimant's left leg was about 170 degrees; that when he examined claimant on January 3, 1940, he had about 150 degrees flexion in the right knee; that ordinarily a person has the same range of flexion in both knees; that at the time of the hearing, to wit, on May 21, 1940, claimant had complete extension, but had a loss of flexion, which he estimated to be between ten and fifteen degrees.

From a consideration of the record before us we find as follows:

That on July 1, 1939, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State; that on such date claimant sustained accidental injuries which arose out of and in the course of his employment; that notice of the accident was given to said respondent and claim for compensation on account thereof was made within the time required by the provisions of such Act; that the claimant's wages were ninety cents (90c) per hour, limited to forty (40) hours per week; that the earnings of the claimant during the year preceding the accident, computed in accordance with the provisions of Section Ten (10) of the Workmen's Compensation Act, as construed by our Supreme Court in the case of *Ruda* vs. *Ind. Com.*, 283 Ill. 550, were two hundred (200) times his daily wage, to wit, Fourteen Hundred Forty Dollars ($1,440.00), and his average weekly wage was Twenty-seven Dollars and Sixty-nine Cents ($27.69); that claimant at the time of the injury had one child under the age of sixteen (16) years; that all necessary first aid, medical, surgical, and hospital services were provided by respondent; that claimant was temporarily totally disabled from the date of his injury as aforesaid to December 4, 1939, to wit, for a period of twenty-two and two-sevenths (22 2/7) weeks; that he also suffered the permanent loss of ten per cent (10%) of the use of his right leg; that the sum of Four Hundred Forty-three Dollars and Ninety-four Cents ($443.94) has been paid by respondent for non-productive time, and such sum must therefore be held to apply on the compensation due the claimant as aforesaid.

We further find that the claimant is entitled to have and receive from respondent the sum of Sixteen Dollars and Fifty Cents ($16.50) per week for 22-2/7 weeks temporary total disability, in accordance with the provisions of paragraph (b) of Section eight (8) of the Workmen's Compensation Act, and the further sum of $16.50 per week for the period of Nineteen (19) weeks for the permanent loss of ten per cent (10%) of the use of his right leg in accordance with the provisions of paragraph E-15 and paragraph L of Section eight (8) of such Act, less the sum of $443.94 heretofore paid by the respondent, making a net amount of Two Hundred Thirty-seven Dollars and Twenty-seven Cents ($237.27).

We further find that all of the compensation due to claimant as aforesaid has accrued at this time.

Award is therefore entered in favor of the claimant, Melvin Cook, for the sum of Two Hundred Thirty-seven Dollars and Twenty-seven Cents ($237.27).

This award, being subject to the provisions of an Act entitled "An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof" (Illinois Revised Statutes, 1939, Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies until the Expiration of the First Fiscal Quarter after the Adjournment of the next Regular Session of the General Assembly," approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided by the foregoing Acts.